IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

|  |  |
|---|---|
| United States<br><br>vs.<br><br>Richard Dublin | Criminal No. 1:03-CR-0834-MBS<br><br>**OPINION AND ORDER** |

This matter is before the Court on Defendant Richard Dublin's ("Defendant") motion, filed pursuant to 28 U.S.C. § 2255 (the "Motion to Vacate" or "§ 2255 Motion"), to vacate, set aside, or correct the sentence imposed on Defendant by this Court on July 21, 2005; the Government's motion for summary judgment; and Defendant's motion for an evidentiary hearing. See ECF Nos. 80, 88, 94. The Court has carefully considered the papers filed and the relevant portions of the record and, for the reasons set forth below, hereby GRANTS the Government's motion for summary judgment and DENIES Defendant's Motion to Vacate and motion for an evidentiary hearing.

**I.   BACKGROUND**

On August 8, 2001, an Aiken County Public Safety Officer on routine patrol was approached by an individual who reported that he had just been shot at by the occupants of a vehicle. Shortly thereafter, the suspect vehicle was located and stopped. Defendant, who was driving the vehicle, was placed in investigative custody, along with his passenger. While checking the vehicle to ensure that there were no more occupants, the officers observed what appeared to be three small bags of crack cocaine on the driver's seat and two similar bags on the floorboard of the driver's side of the vehicle. In total, the officers discovered approximately 123 grams of crack cocaine packaged in

multiple small bags throughout the vehicle. When the officers asked Defendant whether there was a firearm in the car, Defendant advised that there was. A semi-automatic pistol was recovered from the floorboard of the vehicle, under the edge of the passenger's seat. Defendant was arrested and state charges were filed.

On September 18, 2002, while the state charges were pending, James Barrow, a confidential informant who had been working with law enforcement making controlled drug buys, disappeared. Barrow had made controlled buys from Defendant and an individual named Marion Mays, both of whom were arrested on state charges as a result of Barrow's cooperation with law enforcement. On August 22, 2003, the United States Government (the "Government") adopted the state charges and filed an indictment in federal court charging Defendant with knowing and intentional possession of 50 grams or more of cocaine base with intent to distribute (Count One) and knowing use of a firearm in furtherance of and in relation to a drug trafficking crime (Count Two). Indictment, ECF No. 1. Langdon D. Long, Esquire, was appointed to represent Defendant at his arraignment on September 16, 2003. Langdon Long Aff. ¶ 1, ECF No. 88-2.

On September 30, 2003 Defendant entered into a proffer agreement with the Government (the "Proffer Agreement"). ECF No. 101-3. Pursuant to the terms of the Proffer Agreement, Defendant agreed "to be fully truthful and forthright with the United States Attorney's Office . . . and federal law enforcement agents in their investigation of all unlawful activities, to include, but not limited to, truthful and complete debriefings with no misstatements or material omissions of fact of [Defendant]'s knowledge concerning all unlawful activities." Id. at 1. Defendant's "failure to be fully truthful and forthright at any stage will, at the sole election to the Government, cause the obligations of the Government within this Agreement to become null and void." Id. at 2. If the

Government's obligations under the Agreement became null and void due to lack of truthfulness on Defendant's part, "it is expressly agreed that . . . the Government may use for any purpose any and all statements made and other information provided by [Defendant] in the prosecution of [Defendant] on any charges . . . ." Id. Defendant further agreed "to submit to polygraph examination(s)" at the Government's request. Id. Failure to pass such a polygraph "to the satisfaction of the Government . . . constitutes a breach of the Agreement, and the Government may use for any purpose any statements made and other information provided by [Defendant] in the prosecution of [Defendant] on any charges." Id.

On October 23, 2003 Defendant was interviewed by law enforcement agents regarding the disappearance of James Barrow. See Record of Interview, ECF No. 98-1. During that interview, Defendant advised that he and Barrow were "good friends." Id. at 1. Defendant stated that, on the morning of the day that he disappeared, Barrow came to Defendant's house wanting drugs on credit. Id. at 2. Defendant said that Barrow also called him several times that day asking to borrow money to pay a debt that he owed to Mays. Id. Defendant said that he also saw Barrow that afternoon at Billy's truck stop in Trenton and again at a Burger King in North Augusta just before dark. Id. Defendant said that he heard "Rachael Ann say she would get Barrow." Id. at 3. When asked if he thought that Mays had done something to Barrow, Defendant "said he did not know but [Mays] never . . . told him if and who did it." Id. On November 25, 2003 Defendant was interviewed again by law enforcement. See DEA Report of Investigation, ECF No. 98-2. At this interview, Defendant was explicitly advised by Special Agent Phillip Glynn "that he was cooperating under an existing proffer and anything he said would not be used against him as long as he was truthful." Id. at 1. Defendant again advised that the last time he saw Barrow was at a Burger King in North Augusta

when Defendant sold Barrow some crack cocaine. Id. at 5. Defendant stated that he believes that Mays killed Barrow. Id. at 6. On January 15, 2004 Defendant was interviewed again by law enforcement regarding several matters, including Barrow's disappearance. See FBI Report, ECF No. 98-3. At this interview, Defendant "acknowledged that during his previous interview under the Proffer Agreement, he had lied to the interviewing Special Agents and prosecutors concerning the extent of his drug activity. Specifically, [Defendant] admitted that he lied about the amount of drugs he has sold, as well as the identities of those with whom he dealt." Id. at 1. With regard to Barrow, Defendant continued to deny any involvement in or knowledge of his disappearance. Id. at 3. He "admitted that he sold Barrow[] crack cocaine the day before Barrow[] was reported missing, but . . . denied setting Barrow[] up for Mays or anyone else." Id.

On January 21, 2004, the Government filed a superseding indictment charging Defendant with conspiring to distribute 50 grams or more of cocaine base (Count One); knowing and intentional possession of cocaine base with intent to distribute on three separation occasions (Counts Two – Four); and knowing use and possession of a firearm in furtherance of and in relation to a drug trafficking crime (Count Five). Superseding Indictment, ECF No. 31. On March 22, 2004, Defendant, represented by Mr. Long, entered into a Plea Agreement with the Government. See Plea Agreement, ECF No. 41. Pursuant to that Agreement, Defendant agreed to plead guilty to Count Four of the Superseding Indictment in exchange for the Government's agreement to move for the dismissal of the remaining counts of the Superseding Indictment. Id. at ¶¶ 1, 7. Defendant further agreed "to be fully truthful and forthright with the United States Attorney's Office . . . and federal law enforcement agents in their investigation of . . . unlawful activities[.]" Id. at ¶ 5. If Defendant failed to be fully truthful and forthright at any stage, the Government's obligations would, at the

Government's sole election, become null and void. Id. Were that to happen, Defendant agreed and understood that:

> [T]he Defendant will not be permitted to withdraw his plea of guilty . . . [;] the Attorneys for the Government may argue for a maximum sentence . . . [;] and . . . the Attorneys for the Government may use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of [sic] all charges.

Id. Defendant also agreed to "submit to such polygraph examinations as may be requested by the Attorneys for the Government" and that "his failure to pass any such polygraph examination to the Government's satisfaction will result, at [the] Government's sole discretion, in the obligations of the Attorneys for the Government within the Agreement becoming null and void." Id. at ¶ 6. This Court accepted Defendant's guilty plea on March 30, 2004.

Defendant was interviewed again by law enforcement on April 14, April 27, and May 5, 2004. See FBI Report, ECF No. 99. During these interviews, Defendant began to change his story regarding his knowledge of and involvement in Barrow's disappearance. Ultimately, Defendant admitted that he lured Barrow to Mays' brother's house. Id. at 10–11. Once there, Defendant claimed that Mays and another individual pulled Barrow out of the truck that he had been traveling in at gunpoint and duct taped his arms and mouth before putting him in the back of Mays' vehicle. Id. at 11. Defendant got into the car with the others and they all drove to a wooded area in Aiken. Id. Defendant advised that he and the other two men took Barrow deep into the woods, where they left him. Id. On October 12, 2004, this Court held an evidentiary hearing in the matter of United States v. Marion Mays, et al., 1:03-CR-0726-MBS. Defendant testified at that hearing and told substantially the same story regarding Barrow's disappearance. See Evidentiary Hr'g Tr. 167–178, ECF No. 100-1.

Trial was set in United States v. Mays for January 6, 2005. On December 27, 2004, Defendant was interviewed again by law enforcement, this time admitting again that he had not told the truth in his previous interviews. FBI Report 1, ECF No. 99-2. Defendant stated that the previous version that he had told law enforcement and this Court about Barrow's murder was "consistent . . . until the group enters the woods." Id. However, Defendant now confided that, after the group entered the woods, Mays pulled out a gun and said that everyone was going to have to shoot Barrow "because that is the only way they can be sure that no one will tell on each other." Id. at 3. Defendant admitted to shooting Barrow in the leg. He then watched as Mays walked over and shot Barrow, who was still moving at that point, in the head. Id. Defendant said that they left Barrow's body in the woods. Id. On January 4, 2005 the Government had Defendant take a polygraph examination. He was asked if he saw Mays shoot Barrow and if he was present when Mays shot Barrow. See Polygraph Report 2, ECF No. 101. He answered "yes" to both questions and the polygraph examiner advised that Defendant's answers were not indicative of deception. Id.

The Government planned to present Defendant's testimony at the Mays' trial on January 12, 2005; however, when that day came, Defendant demanded specific promises from the Government as to the sentence it would recommend at Defendant's sentencing. See Sentencing Hr'g Tr. 12, ECF No. 96. The Government would not make such a promise and, taking the position that Defendant had already breached his plea agreement, advised that the best it could offer was either a new plea agreement, under which Defendant would have to plead guilty to felony murder, or a proffer that would cover Defendant's testimony at trial only. See id. at 21–22. Defendant was unwilling to agree to the Government's terms and did not testify at the Mays' trial.

Defendant came before this Court for sentencing on July 21, 2005 facing statutory penalties

of at least twenty years and no more than life in prison. After hearing argument and testimony on the issue, the Court found that Defendant had breached his plea agreement. The Court then heard argument and considered evidence regarding several sentencing issues, ruling on each of Defendant's objections to the Pre-Sentence Report (the "PSR"). Central to the instant motion to vacate is the PSR's cross-reference to Barrow's murder. Defendant objected to this cross-reference, arguing that it violated his rights under the Sixth Amendment to the United States Constitution and pursuant to the United States Supreme Court's Decision in Blakely v. Washington, 542 U.S. 961 (2004). The Court overruled the objection. In conclusion, after finding that Defendant had admitted to the purchase and distribution of in excess of three kilograms of cocaine powder and five kilograms of crack cocaine, and had further admitted to his involvement in a drug-related murder of an informant, the Court sentenced Defendant to life imprisonment.

On November 2, 2007 Defendant filed the instant Motion to Vacate in which he alleges that his trial counsel was ineffective for failing to object to the use at sentencing of Defendant's incriminating admissions. See ECF No. 80. The Court directed the Government to respond to the Motion to Vacate and the Government filed its response in opposition and motion for summary judgment on January 1, 2008. ECF No. 88. As required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court issued an order on January 2, 2008, advising Defendant of the Government's summary judgment motion and of dismissal procedures and the possible consequences if Defendant failed to respond adequately. Roseboro Order, ECF No. 89. On February 13, 2008, Defendant filed a response to the Government's motion that he titled, "Petitioner's Motion for Summary Judgment."

ECF No. 93.[1]  Defendant concluded his response/motion with his "respectful[] request[] that the Court grant[] Petitioner['s motion] for summary judgment, and the relief as outline[d] in his 2255 [motion] and memorandum of law, or in the alternate, hold an evidentiary []hearing to ascertain the truth of the Petitioner's sworn allegations." Id. at 5.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  The Court liberally construes complaints filed by pro se litigants, so that they might have the opportunity to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).  Furthermore, under Section 2255, the Court need not hold an evidentiary hearing and may decide the matter on the papers submitted and the record before it when "the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255(b).  Federal Rule of Civil Procedure 56 provides that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any

---

[1]     Although entered on the docket as two separate entries, Petitioner's response/motion and his motion for an evidentiary hearing are actually the same motion, duplicated and entered twice on the docket under different headings. See ECF Nos. 93 & 94.

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III. DISCUSSION

Defendant argues that his sentence should be vacated and the Government held to its agreement not to utilize information obtained from Defendant during interviews conducted under the protection of the Plea Agreement, because his trial counsel provided him with ineffective representation at the sentencing hearing. Specifically, Defendant claims that

> [Trial counsel was ineffective for] fail[ing] to object on the basis of [United States Sentencing Guidelines §] 1B1.8, which generally immunizes from sentencing the consideration of self-incriminating information provided to the applicable plea agreement. Specifically, Petitioner's sentence was increased from level 34 to life pursuant to the murder cross-reference 2D1.1(d)(1). The sentence reached was based, in part, on conduct underlying counts that had been dismissed pursuant to the plea agreement, as well as on information provided by Petitioner.

Mot. To Vacate 4, ECF No. 80.

> Section 1B1.8 of the United States Sentencing Guidelines provides, in relevant part:
>
> (a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.
>
> (b) The provisions of subsection (a) shall not be applied to restrict the use of information:
> . . .
> (4) in the event there is a breach of the cooperation agreement by the defendant[.]

U.S.S.G. § 1B1.8. As such, Defendant's argument that his counsel was ineffective for failing to object on the basis of Section 1B1.8 necessarily requires that this Court first find that its conclusion that Defendant breached the Plea Agreement was in error. To this end, Defendant argues that

9

although he breached the Agreement, that breach was "cured" when he passed the January 4, 2005 polygraph examination. See Def.'s Resp. 2, ECF No. 94.

Defendant's counsel made this same argument that the breach was cured at the sentencing hearing, but the Court rejected it. See Sentencing Hr'g Tr. 17:7–20, ECF No. 96. Accordingly, counsel's failure to object at sentencing under Section 1B1.8 to the use of incriminating statements made by Defendant during interviews conducted under the Proffer Agreement or the Plea Agreement was not ineffective, because by its terms 1B1.8 does not apply where the cooperation agreement has been breached. See United States v. Cooper, 617 F.3d 307, (4th Cir. 2010) ("To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense[.]'") (quoting Strickland v. Washington, 466 U.S. 668, 88 (1984)).[2]

Morever, the Court's finding that Defendant breached the Plea Agreement was amply supported by the law and the record in this case. Once the Court found that Defendant had breached the Agreement, the Government was free—per the terms of the Agreement, as well as Section 1B1.8, quoted above—to utilize any of Defendant's statements for any purpose.

//

//

//

---

[2] In his Response to the Government's motion for summary judgment, Defendant appears to also make allegations about his appellate counsel's failure to object on appeal to the use of his incriminating admissions at sentencing. See Def.'s Resp. 1, ECF No. 94. For the same reasons that the Court finds that trial counsel was not ineffective, it similarly finds that appellate counsel would not have been ineffective for failing to raise this issue on appeal.

10

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS the Government's motion for summary judgment, ECF No. 88, DENIES Defendant's § 2255 Motion to Vacate, ECF No. 80, and DENIES Defendant's motion for an evidentiary hearing, ECF No. 94.

IT IS ORDERED.


                                                    /s/ Margaret B. Seymour
                                                    United States District Judge

March 30, 2011
Columbia, South Carolina